# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DIANE KERSEY,** | ) | |
| Plaintiff, | ) | Civil Action No. 2:08cv00045 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | BY: GLEN M. WILLIAMS |
| **Commissioner of Social Security,** | ) | SENIOR UNITED STATES DISTRICT JUDGE |
| Defendant. | ) | |

This case is currently before the court on the plaintiff's motion for attorney's fees pursuant to the Equal Access to Justice Act, ("EAJA"), 28 U.S.C.A. § 2412(d) (West 2008), which was filed with this court on April 14, 2009, (Docket Item No. 17), ("the Motion"). In response, the Commissioner of Social Security, ("Commissioner"), filed a brief in opposition, (Docket Item No. 19), arguing that the administrative law judge's, ("ALJ"), decision was "substantially justified" and, thus, fees should not be awarded. The Motion is now ripe for decision. For the reasons stated below, the plaintiff's Motion will be granted, and fees will be awarded in the amount requested by plaintiff's counsel.

*I. Facts and Procedural History*

Kersey filed suit in this court to obtain a review of the denial of a claim for benefits under the Social Security Act, as amended, 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2003 & Supp. 2008). By decision dated March 24, 2009, the undersigned remanded the case to the Commissioner pursuant to 42 U.S.C. § 405(g) for further

-1-

development. (Docket Item No. 16), (Memorandum Opinion, ("Opinion"), at 25-39.) In particular, the Commissioner was directed to order a consultative examination to further evaluate Kersey's mental limitations due to the lack of any medical opinions within the record regarding such limitations and/or impairments. (Opinion at 25-28.) Furthermore, because the ALJ failed to include certain physical limitations relating to Kersey's ability to use her left upper extremity, it was determined that the ALJ's residual functional capacity finding was not supported by substantial evidence. (Opinion at 36-38.) Lastly, the undersigned found that, considering the fact that the ALJ erred in evaluating Kersey's mental and physical impairments, the ALJ's finding that Kersey could perform her past relevant work was not supported by substantial evidence. (Opinion at 38.) Therefore, the Commissioner was instructed that vocational expert testimony was necessary to properly assess the impact of Kersey's physical and mental impairments on her ability to perform her past relevant work. (Opinion at 38-39.)

After entry of this court's Order remanding the case to the Commissioner, Kersey filed her Motion seeking an award of attorney's fees, and the Government responded with its brief in opposition.

## II. Analysis

The EAJA provides that, in actions brought by or against the United States, attorney's fees shall be awarded to the other party if it prevails, unless the United States' position was "substantially justified" or special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1). It is the government's burden to demonstrate that its

-2-

Case 2:08-cv-00045-GMW-PMS    Document 20    Filed 05/21/09    Page 2 of 10    Pageid#: 124

position was substantially justified. *See Crawford v. Sullivan*, 935 F.2d 655, 658 (4th Cir. 1991). For a position to be substantially justified, it must be "more than merely undeserving of sanctions for frivolousness," it must be justified to a degree as to satisfy a reasonable person. *Pierce v. Underwood*, 487 U.S. 552, 557-59 (1988).

After a thorough review of the evidence, as well as the arguments asserted by both parties, I am unable to conclude that the ALJ's decision was substantially justified. The regulations plainly state the circumstances in which a consultative examination should be ordered. A consultative examination is obtained in order to resolve any conflicts or ambiguities within the record, and "to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. §§ 404.1519(a)(2), 416.919(a)(2). Such an examination can be ordered by the ALJ once he has given "full consideration to whether the additional information needed . . . is readily available from the records of [the claimant's] medical sources." 20 C.F.R. §§ 404.1519(a)(1), 416.919(a)(1) (2008). However, prior to ordering a consultative examination, the ALJ is to not only consider the existing medical records, but he also should consider "the disability interview form containing [the claimant's] allegations as well as other pertinent evidence in [the claimant's] file." 20 C.F.R. §§ 404.1519(a)(1), 416.919(a)(1) (2008). The ALJ *must* order a consultative examination "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." 20 C.F.R. §§ 404.1519(b), 416.919(b) (2008).

Moreover, binding precedent from the United States Court of Appeals for the Fourth Circuit further explains that the ALJ has a duty to help develop the record. *See*

*Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). In *Cook*, the court stated that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on evidence submitted by the claimant when that evidence is inadequate." 783 F.2d at 1173. The regulations require only that medical evidence be "complete" enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1513(e), 416.913(e) (2008).

As stated in this court's previous Opinion, the court recognizes that there is minimal evidence within the record pertaining to Kersey's mental condition and the treatment thereof. However, the record demonstrates that Kersey complained of, and was treated for, feelings of anxiousness and symptoms of panic disorder from November 2001 to July 2006. (Record, ("R."), at 159-60, 250.) Kersey was prescribed medications such as Zoloft, Prozac and Effexor to treat her conditions. (R. at 159-60, 250.) In addition, at the April 25, 2007, ALJ hearing, Kersey alleged that she experienced panic attacks once or twice a week, noting that the attacks impacted her ability to function. (R. at 335.)

As summarized above, in determining whether a consultative examination is necessary, the ALJ must not only consider the existing medical reports, but he also should consider the claimant's allegations contained in the disability interview form. *See* 20 C.F.R. §§ 404.1519(a)(1), 416.919(a)(1) (2008). In Kersey's disability interview form, she not only alleged physical impairments, but she also specifically alleged disability due to nervousness, panic attacks, inability to concentrate and

-4-

forgetfulness. (R. at 91, 106.) Despite the fact that the regulations give the ALJ some discretion in determining whether to obtain a consultative examination, it is undisputed that such an examination *must* be ordered in situations where there is insufficient evidence to support the claim. *See* 20 C.F.R. §§ 404.1519(b), 416.919(b) (2008). Thus, after examining the evidence of record, I concluded that although the record contained minimal evidence related to Kersey's alleged mental impairments, the fact that she alleged disability due to, among other things, psychiatric-related problems and was treated for those problems, suggested that the ALJ had a duty to further inquire by developing the record and ordering a consultative mental examination. *See generally Cook*, 783 F.2d at 1173; *see also* 20 C.F.R. §§ 404.1519(b), 416.919(b) (2008).

Additionally, "[i]n the absence of any psychiatric or psychological evidence to support his position, the ALJ simply does not possess the competency to substitute his views on the severity of [a claimant's] psychiatric problems for that of a trained professional." *Grimmet v. Heckler*, 607 F. Supp. 502, 503 (S.D. W. Va. 1985) (citing *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)). In this particular case, the record was completely devoid of any opinion evidence regarding Kersey's alleged mental impairments and limitations. Thus, the ALJ's finding that Kersey's alleged mental impairments were non-severe was not supported by any psychiatric or psychological evidence of record. That said, by making such a finding in a case where the record did not contain a single medical opinion assessing Kersey's mental impairments, I concluded that the ALJ had erred by substituting his opinion for that of a trained mental health professional. *See McLain*, 715 F.2d at 869; *Oppenheim*, 495 F.2d at 397. Accordingly, the undersigned

Case 2:08-cv-00045-GMW-PMS   Document 20   Filed 05/21/09   Page 5 of 10   Pageid#: 127

found that the ALJ's decision with respect to Kersey's mental impairments was not supported by substantial evidence.

In the court's previous decision, the undersigned also found that the ALJ erred in a portion of his evaluation of Kersey's physical impairments. Dr. Kevin Sahli, M.D., completed a physical consultative examination, finding that Kersey was unable to perform any overhead lifting or reaching with her left upper extremity. (R. at 197-201.) A state agency physician, Dr. Richard M. Surrusco, M.D., also reported findings that limited Kersey's ability to use her left upper extremity. (R. at 228-29.) Dr. Surrusco found that Kersey was limited to only occasional pushing and/or pulling with the left upper extremity and occasional reaching in all directions, including overhead, with the left upper extremity. (R. at 228-29.) In addition, a review of the record indicates that Kersey consistently complained of left shoulder pain and discomfort. Although the record shows that the ALJ rejected portions of Dr. Sahli's and Dr. Surrusco's opinions, the ALJ did not specifically reject or accord lesser weight to the portions pertaining to Kersey's left upper extremity. Thus, as stated in the previous Opinion, "because the ALJ stated he agreed with the state agency physicians and Dr. Sahli that Kersey was capable of performing light work, it is only reasonable to assume that the ALJ essentially adopted the opinions as to Kersey's upper extremity limitations, concluding that such limitations were encompassed in his finding that Kersey could perform [the full range of] light work." (Opinion at 37.)

Social Security Ruling 85-15 states that "[r]eaching (extending the hands and arms in any direction) and handling . . . are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large

number of occupations a person could otherwise do." S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992). Relying upon this ruling, and conceding that nothing within the record suggested that Kersey's past relevant work required a great deal of reaching, I opined that the ALJ should have precisely outlined Kersey's left upper extremity limitations in his formal residual functional capacity finding. (Opinion at 37.) I also opined that, because reaching is required in virtually all occupations, "the fact that the ALJ adopted medical opinions that either completely prohibited overhead reaching or limited Kersey's ability to reach with her left upper extremity indicates that her ability to perform a large number of occupations may be reduced, thereby rendering Kersey unable to perform a full range of light, unskilled work." (Opinion at 37.) Because the ALJ failed to include these specific physical limitations, I determined that his decision was not supported by substantial evidence.

Social Security Ruling 85-15 also states that because varying degrees of limitations on one's ability to reach would have different effects on a claimant's ability to work, the assistance of a vocational expert may be needed to determine the effects of those limitations. *See* S.S.R. 85-15, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings 1983-1991 (West 1992). In the case at hand, the vocational expert's testimony was limited to the identification of the exertional levels of Kersey's past relevant work. There was absolutely no inquiry or testimony regarding how Kersey's impairments or limitations may impact her ability to perform work-related activities. In rendering my previous decision, I recognized the general principle that the use of vocational expert testimony is necessary only when it is determined that a claimant cannot return to her past relevant work. *See generally Grant v. Schweiker*, 699 F.2d

-7-

189, 192 (4th Cir. 1983). However, considering the facts of this case, based on the ALJ's erroneous evaluation of Kersey's physical impairments, I found the ALJ's finding that Kersey could perform her past relevant work to be unsupported by substantial evidence of record.

Consequently, this case was remanded for further development of the record and for further consideration of Kersey's mental and physical impairments. (Opinion at 25-39.) Additionally, because of the ALJ's improper evaluation of Kersey's mental and physical impairments, the Commissioner was instructed that vocational expert testimony was necessary to assess the impact of Kersey's impairments on her ability to perform her past relevant work. (Opinion at 38-39.)

After consideration of the record as a whole, as well as the arguments asserted by each party, the court is of the opinion that the ALJ failed to adhere to the applicable regulations, as well as established Fourth Circuit precedent. Considering the ALJ's failure to follow the relevant regulations and applicable Fourth Circuit caselaw, this court cannot find that the decision was justified to a degree to satisfy a reasonable person. *See Pierce*, 487 U.S. at 557-59. Accordingly, the undersigned finds that the ALJ's decision was not substantially justified, thus, attorney's fees shall be awarded to Kersey, the prevailing party in this case.

The remaining question before the court is to determine the proper amount of attorney's fees. The EAJA provides that the amount of fees awarded must be based "upon prevailing market rates" and must not exceed $125.00 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the

limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C.A. § 2412 (d)(2)(A). The plaintiff contends that the cost of living has increased and consents to a fee of $130.00 per hour. The court finds this to be a reasonable cost of living adjustment and a reasonable hourly rate.

Kersey's counsel has submitted a sworn, itemized record of the time expended in this case, indicating a total of 13.75 hours for a total fee of $1,787.50. After reviewing the itemized record of fees and costs, as well as the total amount of fees sought, the undersigned finds that such a request is reasonable. Therefore, pursuant to 28 U.S.C. § 2412(d), attorney's fees shall be awarded in the amount requested of $1,787.50. Although this court's past practice has been to order that attorney's fees be paid directly to plaintiff's counsel, the Fourth Circuit has recently ruled that "[a]ttorney's fees under the EAJA are [to be] awarded to the 'prevailing party,' not the attorney." *Stephens v. Astrue*, No. 08-1527, slip op. at 20 (4th Cir. May 7, 2009). The court recognizes the Fourth Circuit's ruling on this issue; however, in this case, Kersey agreed that any and all fees due under the EAJA were to be assigned to her counsel. Thus, attorney's fees in the amount of $1,787.50 are to be paid directly to plaintiff's counsel.

Therefore, for the reasons set forth in this Memorandum Opinion, Kersey's Motion is hereby **GRANTED**.

An appropriate order and judgment will be entered.

DATED:   This 21st day of May 2009.

/s/ *Glen M. Williams*
SENIOR UNITED STATES DISTRICT JUDGE